IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELADIO P.G.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civil No. 23-1297 (GLS)

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA" or "agency") decision to redetermine and terminate his Social Security Disability Insurance ("SSDI") benefits. Docket Nos. 1, 11. The termination occurred after a rehearing on remand. See Picón-González v. Comm'r of Soc. Sec., No. 18-1016 (BJM), 2019 WL 4187701 (D.P.R. Sept. 4, 2019) ("Picón-González I"). The SSA opposed. Docket No. 16. Plaintiff replied. Docket No. 18. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 6. After careful review of the administrative record and the parties' briefs, the SSA's decision is **REVERSED** and **REMANDED** for proceedings consistent with this opinion.

I.    Procedural Background

Plaintiff worked for Abbot Labs for nearly nineteen years as a purchasing section manager and later as a senior planner. Picón-González, 2019 WL 4187701, at *3. On October 27, 2009, Plaintiff applied for SSDI and last met insured status requirements on December 31, 2012. Id.; Tr. 1936. Plaintiff claims to have been disabled since January 25, 2007, due to a spinal disorder which prevented him from bending, kneeling, walking, and using stairs. Id. He testified that he left his job for medical reasons in 2007. Id. He engaged the help of a non-attorney representative, Samuel

---

[1] Plaintiff's last name is omitted for privacy reasons.

1

Torres Crespo ("Torres-Crespo"), throughout the insurance claims process. In support of his claim, Plaintiff submitted evidence from several doctors, including Dr. José R. Hernández González ("Dr. Hernández"). Id. On March 15, 2010, the SSA found that the evidence supported a disability onset of July 1, 2008. Id.

Around that same time, the United States Department of Justice and the Office of the Inspector General ("OIG") conducted an extensive investigation of doctors in Puerto Rico that were submitting fraudulent medical evidence in SSDI applications. Id. On August 21, 2013, three doctors, Torres-Crespo, and seventy-one disability insurance applicants were indicted for fraud in connection with the OIG investigation. Id. Dr. Hernández, the neurologist who submitted medical evidence in Plaintiff's case, plead guilty to a conspiracy to make false statements to the SSA. Id. Dr. Hernández admitted that he "would exaggerate medical complaints and symptoms in order to maximize the probability that his patients would be approved for Social Security disability insurance benefits." Tr. 731. Torres-Crespo pled guilty to having made false and fraudulent statements and representation to the SSA. Id.; Tr. 741-48. As part of his guilty plea, Torres-Crespo admitted that he submitted fraudulent disability reports to the agency. Tr. 741-48.

The SSA created a special unit to review nearly 7,000 cases containing evidence submitted by Dr. Hernández, Torres-Crespo, and the other indicted doctors. Picón-González, 2019 WL 4187701, at *4. The special team excluded evidence from those that had been criminally charged and then determined whether sufficient evidence remained to support the disability claims of each claimant. Id. The SSA suspended benefits for those claimants and notified them of the redetermination process pursuant to 42 U.S.C. § 405(u)(1)(A). On January 10, 2014, Plaintiff received notice that his benefits would be suspended pending redetermination because the agency found that he had insufficient evidence to support his benefits allowance. After appealing the denial before an ALJ, the ALJ issued an unfavorable decision in April 2017. Tr. 15-27. Plaintiff sought judicial review. Tr. 2020-21. This District Court held that "Picón's claim for disability insurance benefits was deemed fraudulent without the opportunity for him to rebut that assertion. Similarly, disregarding evidence absent a direct showing that the evidence has been tainted by fraud denies [] beneficiaries a fair opportunity to make their case." Picón-González, 2019 WL 4187701, at *16. Consequently, the District Court remanded so that the SSA could provide Plaintiff an opportunity to challenge the finding of fraud and similar fault and the decision to

disregard medical reports. Id. at *17. The Commissioner filed an appeal before the First Circuit, but subsequently dismissed the appeal voluntarily. Tr. 2038-39, 2047.

In June 2022, the agency sent Plaintiff a "Notice of Hearing" which explained that, under section 405(u), the SSA was required to redetermine his disability case because Dr. Hernández and Torres-Crespo had pled guilty to making false statements to the SSA. Tr. 2176-77. The notice identified evidence that the SSA intended to disregard. See Tr. 2179 ("I will not consider the evidence from Mr. Torres Crespo and Dr. Hernandez-Gonzalez in Exhibits 1B; 2B; 3E; 2F, pages 20-23; 3F, pages 2-11 and 19-22; 11F, pages 81-83 and 128; and 13F, pages 58-60 and 97.").

A rehearing was held before a new ALJ on August 18, 2022. Tr. 1967-87. The ALJ informed Plaintiff that he would have the opportunity to rebut the exclusion of evidence submitted by Dr. Hernández and Torres-Crespo before the ALJ decided whether to disregard any such evidence. Tr. 1968, 1969, 1970. When asked if he wished to rebut the potential exclusion of evidence, Plaintiff referred to a memorandum of facts and law submitted to the SSA.[2] Tr. 1970. In his brief, Plaintiff argued that the OIG never found that fraud was present in his case. Tr. 1938. The ALJ relied on the memorandum. Id. And continued to question Plaintiff regarding his symptoms and treatments from 2007 through 2010. At no point during the hearing the ALJ explained how Plaintiff's records were marred by fraud. On September 6, 2022, the ALJ concluded that Plaintiff was not entitled to disability benefits. Tr. 1936-48. The ALJ reasoned that the Adult Disability Report filled out by Torres-Crespo "contain[ed] a description of symptoms and limitations similar to those that he admitted fabricating." Tr. 1937. As to the medical records submitted by Dr. Hernández, the ALJ found a reason to believe fraud or similar was involved because Dr. Hernández reported treating Plaintiff monthly, but no treatment notes were available to corroborate that. And because Dr. Hernández "ha[d] admitted to associating himself with Mr. Torres Crespo for a fraudulent purpose, and [] he ha[d] admitted to exaggerating medical complaints and symptoms[.]" Tr. 1938. The ALJ further stated that while Torres-Crespo and Dr. Hernández were indicted and pled guilty in two unrelated cases, they admitted working together in a fraudulent scheme. Id. ("[T]o argue that they only plead guilty in two cases is to ignore their admissions regarding the larger fraudulent scheme."). The ALJ thus disregarded evidence. Tr. 1938. After considering the remaining evidence in the record, the ALJ found that Plaintiff was not

---

[2] Plaintiff argues that the ALJ failed to consider his memorandum. Docket No. 11 at p. 7. However, the ALJ admitted the memorandum as evidence and discussed its content in her decision. See Tr. 1938, 1970-71.

3

disabled. The Appeals Council denied Plaintiff's subsequent appeal. Tr. 1921. On June 6, 2023, Plaintiff filed this action. Docket No. 1.

## II.     Discussion

Plaintiff's arguments can be divided into two categories: errors committed by the ALJ and Due Process violations in the redetermination process. The Court begins with the alleged errors in the redetermination process. See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988) (discussing the constitutional avoidance doctrine).

**1.   Standard of Proof for Fraud or Similar Fault**

"The Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A). "When redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." Id. § 405(u)(1)(B). To redetermine a claim under Section 405(u), the SSA must have some "reason to believe" that fraud or similar fault was involved. The Appeals Council defines its procedures and guiding principles in the Hearings, Appeals and Litigation Law manual ("HALLEX").[3] According to HALLEX, the agency may develop a "reason to believe" an application involved fraud or similar fault as a result of (1) an SSA investigation, (2) a referral based on a criminal or other law enforcement investigation, or (3) a referral from the OIG to the Commissioner of Social Security. HALLEX I-1-3-25(C)(4)(a) (updated June 7, 2022). Plaintiff claims that the SSA must demonstrate fraud or similar fault by a preponderance of the evidence. Docket No. 11 at pp. 14-15. The Commissioner disagrees. Docket No. 16 at pp. 16-17.

Social Security Regulation ("SSR") 22-2p,[4] 2022 WL 2533117, clarifies that when disregarding evidence under Section 405(u), the finding of similar fault "requires more than mere suspicion, speculation, or a hunch, but it does not require a preponderance of evidence." And while the First Circuit has yet to determine the level of deference that should be extended to SSRs,

---

[3]     HALLEX can be found online at https://www.ssa.gov/OP_Home/hallex/hallex.html.

[4]     SSR 22-2p "explains the standards [the agency] use[s] when [it] determine[s] whether there is reason to believe that similar fault was involved in providing evidence in connection with a claim for benefits or payments." SSR 22-2P, 2022 WL 2533117, at *2. HALLEX § I-1-3-15 mirrors the procedures outlined in SSR 22-2p.

4

(Coskery v. Berryhill, 892 F.3d 1, 5 n.3 (1st Cir. 2018)), there is no doubt that SSRs are entitled to deference, Washington State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385 (2003). In support of his contention, Plaintiff cites to HALLEX I-1-3-15. Docket No. 11 at p. 14 n.15. But HALLEX I-1-3-15 requires proof by preponderance of the evidence in **reopening** procedures. See HALLEX I-1-3-15(C)(2) (updated June 7, 2022). Reopening procedures are different from redeterminations. A redetermination is appropriate under the "reason to believe" standard, which requires no more than probable cause. United States v. Vasquez-Algarin, 821 F.3d 467, 474-75 (3d Cir. 2016); United States v. Werra, 638 F.3d 326, 327 (1st Cir. 2011). Indeed, HALLEX I-1-3-15(C)(1) provides that "[t]he reason to believe standard … does not require a preponderance of the evidence."

### 2. Res Judicata

Plaintiff contends that because there was no evidence of fraud or similar fault in his medical records, *res judicata* precludes the SSA from revisiting his case. Docket Nos. 11 at pp. 3, 6, 15, 23, and 28. *Res judicata* principles apply to administrative proceedings. See Carlos V. v. Comm'r of Soc. Sec., 2024 WL 554347, at *5 (D.P.R. Feb. 12, 2024); Berríos-Ortiz, 2019 WL 4599834, at *4 (D.P.R. Sept. 23, 2019); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977); Miranda v. Sec'y of Health, Ed. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975). Nonetheless, Congress delegated to the SSA the power to redetermine a claim under certain circumstances, including "if there is reason to believe that fraud or similar fault was involved in the application of the individual." 42 U.S.C. § 405(u)(1)(A); Berríos-Ortiz, 2019 WL 4599834, at *4; City of Arlington, Tex v. F.C.C., 569 U.S. 290, 291 (2013) (an agency can act pursuant to the authority delegated by Congress). In the instant case, the SSA had reason to believe Plaintiff's claim involved fraud or similar fault after the OIG referred the case for redetermination. Dr. Hernández was charged with making false statements to the SSA in violation of 18 U.S.C § 371. Torres-Crespo was charged with making a false statement or representation to the SSA. Both pled guilty to fraud charges. As such, redetermination of Plaintiff's disability claim was authorized by the statute and not precluded by *res judicata*.[5] See Hicks v. Comm'r of Soc. Sec., 909 F.3d 786, 810-11 (6th Cir. 2018) (finding

---

[5] Plaintiff notes throughout his brief that he was not indicted or found guilty of fraud in relation to his disability application. The Court acknowledges that he was not charged, as did the ALJ. See Tr. 1938. Section 405(u)(1)(A) requires a "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." The claimant himself or herself need not be involved. See SSR 22-1p(C)(2), 2022 WL 2533116, at

5

that section 405(u) overrides principles of *res judicata* and authorizes reassessments of initial determinations if there is reason to believe that fraud was involved in the application); Berríos-Ortiz, 2019 WL 4599834, at *4 (*res judicata* inapplicable when a redetermination arose from the indictment of one of the doctors who examined the claimant).

### 3. Ex Post Facto Clause

Plaintiff alleges, without elaboration, that the ALJ erred in referring to SSRs (i.e., SSRs 16-1p, 22-1p and 22-2p) that were implemented by the agency after the events that gave rise to this case. See Docket No. 11 at pp. 11, 25 and Docket No. 18 at p. 7. But "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Furthermore, although SSR 22-2p became effective on May 17, 2022, the prohibition against an *ex post facto* application of the law applies only to criminal statutes or civil statutes that may have a punitive purpose. See Mahler v. Eby, 44 S. Ct. 283, 286 (1924); Weaver v. Graham, 101 S. Ct. 960, 964 (1981) ("[t]he ex post facto prohibition forbids that Congress and the States to enact any law which imposes a punishment[.]"); Justiniano v. Comm'r of Soc. Sec., 2024 WL 3072239, at *9-10 (D.P.R. Apr. 11, 2024), report and recommendation adopted Justiniano v. Comm'r of Soc. Sec., 2024 WL 3070687 (D.P.R. June 20, 2024). The new regulations are not punitive. Their purpose is interpretative and they "do not announce new substantive rules." Justiniano, 2024 WL 3072239, at *9.

### 4. SSA's Redetermination Period

Plaintiff challenges the time period considered during redetermination: January 25, 2007 through March 15, 2010. Docket No. 11 at pp. 11-12, 21-26; Tr. 1948. Plaintiff claims that the SSA should have considered evidence through the date last insured, December 31, 2012. This argument is unavailing as SSR 22-1p expressly requires ALJs to "consider the claim only through the date of the final determination or decision on the beneficiary's or recipient's application for benefits or payments (i.e., the date of the original favorable determination or decision)." SSR 22-

---

*5 ("For [SSA] to disregard evidence it is not necessary that the affected beneficiary or recipient had knowledge of or participated in the fraud or similar fault").

1p, 2022 WL 2533116, at *6; Justiniano, 2024 WL 3072239, at *10. SSR 22-1p's predecessor (SSR 16-1p) shared the same regulatory language. Justiniano, 2024 WL 3072239, at *10.

### 5. Waiver of Overpayment

Section 405(u) states that whenever "there is insufficient evidence to support [the] entitlement [of disability benefits], the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 405(u)(3). The Commissioner may "require such overpaid person or his estate to refund the amount in excess of the correct amount." 42 U.S.C. § 404(a)(1)(A). Beneficiaries may seek a disability insurance waiver to avoid repayment of benefits later deemed to be overpayments. 42 U.S.C. § 404(b)(1).

Plaintiff requests waiver of any overpayment. Docket No. 11 at p. 26. The Commissioner counters that Plaintiff's request is premature because Plaintiff did not exhaust administrative remedies before seeking judicial intervention. The process to request that the collection of amounts overpaid by SSA be waived requires "an allegation of an overpayment assessment, administrative appeal of the issue, and a final decision from the SSA declining to waive the overpayment." Justiniano, 2024 WL 3072239, at *8. See also D.S. v. Kijakazi, 2024 WL 22858, at *2 (D. Mass. Jan. 2, 2024). Plaintiff has not sought the waiver of overpayment to the SSA. Administrative remedies have not been exhausted.

### 6. Due Process Claim

Plaintiff sets forth various evidentiary challenges concerning the lack of evidence of fraud in the record. Docket No. 11 at pp. 5-14. Plaintiff claims that the SSA presumed that the evidence provided by Dr. Hernández and Torres-Crespo was fraudulent because they had been convicted for providing false statements to the SSA.[6] The Commissioner sustains that the agency provided Plaintiff notice and an opportunity to be heard. And that the ALJ's determination was supported

---

[6] Plaintiff complains that the nearly one-hundred-page OIG referral letter is "heavily redacted." Docket No. 11 at p. 4. Aside from not raising this issue before the ALJ, the Commissioner informed that an unredacted copy was provided to Plaintiff. The unredacted copy details Torres-Crespo's fraud scheme. Docket No. 16 at p. 9 n.10. The redacted portion of the letter would not have helped Plaintiff to establish the absence of fraud or similar fault. See Kheireddine v. Gonzales, 427 F.3d 80, 85-86 (1st Cir. 2005) (missing evidence does not constitute a due process violation unless the claimant shows that the evidence makes a "difference in the outcome of the review.").

Plaintiff also sustains that the SSA should have sought the testimony of the agency employee who investigated his case and first developed a reason to believe that fraud or similar fault was present in Plaintiff's case. Docket No. 11 at pp. 8, 10, 17, 20. But Plaintiff did not request the ALJ to subpoena the employee(s). Docket No. 16 at pp. 15-14 n.16. See 20 C.F.R. § 404.950(d) (describing the issuance of subpoenas).

by a fraud or similar fault finding based on Dr. Hernández and Torres-Crespo's plea agreements. Docket No. 16 at pp. 11-15, 23-28.

In issuing the notice of redetermination, the SSA relied on 42 U.S.C. § 405(u), which states that "[t]he Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits ..." § 405(u)(A). The statute further states: "[w]hen redetermining the entitlement, or making an initial determination of entitlement, of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." § 405(u)(B).

It is well established that the continued receipt of disability benefits is a statutorily created property interest protected by the Fifth Amendment. Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Pérez-Maldonado v. Comm'r of Soc. Sec., 2024 WL 3517637, at *5 (D.P.R. July 24, 2024). And that the SSA cannot terminate benefits without first providing the claimant the opportunity to challenge the claim of fraud. Pérez-Maldonado, 2024 WL 3517637, at *5. The U.S. Supreme Court applies a three-part balancing test to claims of due process violations: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. In Picón-González I, this District Court analyzed the Mathews factors and found that they favored Plaintiff, and others whose benefits were redetermined after the OIG investigation, because the claimants were not afforded the opportunity to challenge the finding of fraud or similar fault. Picón-González, 2019 WL 4187701, at *16. The District Court further held that "disregarding evidence absent a direct showing that the evidence has been tainted by fraud denies disability insurance beneficiaries a fair opportunity to make their case." Id. This District Court thus remanded so that Plaintiff could challenge the evidence of fraud and similar fault in his application for benefits. Id. at 17.

The Government avers that Plaintiff was given notice of the hearing and the exhibits the agency planned to disregard, and that Plaintiff was given an opportunity to rebut exclusion of medical evidence. But while there is no dispute that Plaintiff received notice of the hearing, that

the agency informed that it planned to disregard evidence submitted by Dr. Hernández and Torres-Crespo, and that Plaintiff was allowed to testify at the hearing, "the SSA bore the burden of production [] to present its reasons for believing that [Plaintiff's] claim for benefits was tainted by fraud [or similar fault]." Pérez-Maldonado v. Comm'r of Soc. Sec., 2024 WL 3517637, *5 (D.P.R. July 24, 2024). The SSA did not meet this burden.

During the hearing, the ALJ made no reference to the investigations or plea agreements, except for stating that "fraudulent actors" had submitted evidence. See Tr. 1967-87. The ALJ informed Plaintiff that he was allowed to "make arguments as to whether fraud or similar fault was or was not involved in the application for benefits before I decide whether to disregard any evidence." Tr. 1968. However, the ALJ did not inform Plaintiff how that evidence established the existence of fraud or similar fault in Plaintiff's application for benefits. Plaintiff's attorney relied on the brief. Tr. 1970. And the ALJ proceeded to ask questions about Plaintiff's symptoms and treatments during the closed period. In her opinion, the ALJ stated that Plaintiff's Adult Disability Report filed by Torres-Crespo contained symptoms and limitations like those Torres-Crespo admitted to fabricating. Tr. 1937. The ALJ mentioned that Dr. Hernández admitted to exaggerating medical complaints and symptoms and referring patients to specialists when the condition did not require a referral. And that Dr. Hernández reported treating Plaintiff monthly but that there was no evidence of that treatment. Tr. 1937-38. The ALJ understood the foregoing to be sufficient to disregard medical evidence from Dr. Hernández and Torres-Crespo. Id. But the reasons to believe that the evidence was fraudulent were not articulated prior to the hearing or during the hearing. By not articulating these reasons prior to the submission of the case, the ALJ effectively denied Plaintiff an opportunity to rebut the belief that the disregarded evidence was fraudulent. See Pérez-Maldonado, 2024 WL 3517637 at*6.

In Pérez-Maldonado, a case nearly identical to this one, the SSA redetermined Pérez Maldonado's disability benefits after receiving a referral by the OIG and concluded that she was not disabled after finding that there was fraud or similar fault in her application. Pérez Maldonado appealed and this District Court found that the SSA's initial redetermination violated her due process rights by not allowing her to challenge the finding of fraud or similar fault. The case was remanded for a rehearing. After the rehearing, the SSA determined that Pérez Maldonado was not entitled to benefits. Again, Pérez Maldonado moved to reverse the Commissioner's decision to terminate her disability benefits based on violations to her constitutional rights. This District Court

9

concluded that Pérez Maldonado's due process rights were violated when the SSA failed to produce evidence to support its finding of fraud at the hearing stage. Pérez-Maldonado, 2024 WL 3517637 at *5-6.

Like in Pérez Maldonado, the SSA here did not clearly state, prior to the hearing or during the hearing, why it believed the medical evidence from Dr. Hernández and Torres-Crespo was tainted by fraud. Neither did the SSA explain to Plaintiff what about those records pointed to fraud in Plaintiff's case. See Pérez-Maldonado, 2024 WL 3517637 at *6 ("The hearing notice sent to [Plaintiff] merely referred to the investigations and guilty pleas of Torres and Dr. Hernández, but none of these mention [Plaintiff], and the SSA did not otherwise articulate a link between h[is] records and the fraud scheme."). By not giving Plaintiff notice of how the evidence at issue established the existence of fraud in Plaintiff's case specifically, Plaintiff was left with having to prove a negative—that there was no fraud in his case without being put on notice of the reasons the SSA suspected fraud in the first place. See id. at *5 ("Otherwise, [Plaintiff] would be unfairly burdened with proving a negative (i.e., that h[is] case did not involve fraud) without reference to the reasons why the SSA suspected fraud in the first place."). Plaintiff has a procedural due process right to challenge the SSA's assertion of fraud in his case. See Hicks v. Colvin, 214 F. Supp. 3d 627 (E.D. Ky. 2016). Prior to rendering the decision, the ALJ should have informed Plaintiff how the evidence at issue established a reason to believe that there was fraud or similar fault in the approval of Plaintiff's benefits so that he could attempt to rebut that during the hearing. "Instead, while the hearing technically gave [Plaintiff] a chance to rebut the SSA's fraud allegation, there was nothing presented for h[im] to rebut." Id. Plaintiff's redetermination proceedings violated Plaintiff's procedural due process rights.

### III.    Conclusion

For the reasons discussed above, the SSA's decision to terminate benefits is **REVERSED**. The case is remanded for administrative proceedings consistent with the Court's opinion.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 26th day of September 2024.

                s/Giselle López-Soler
                GISELLE LÓPEZ-SOLER
                United States Magistrate Judge